IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAKESHA TRIMBLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-93-WKW |
| | ) | [WO] |
| MONTGOMERY PULMONARY | ) | |
| CONSULTANTS, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In March 2013, Plaintiff Lakesha Trimble ("Trimble"), an African American woman, began working for Montgomery Pulmonary Consultants, P.A. ("Defendant" or "MPC"), as a medical assistant. Trimble maintained this position for over six years until her employment was allegedly terminated in December 2019. Following the end of her employment, Trimble sued Defendant. She brings the following four claims: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (Count 1); (2) race discrimination in violation of 42 U.S.C. § 1981 (Count 2); (3) retaliation in violation of Title VII (Count 3); and (4) retaliation in violation of § 1981 (Count 4).

Before the court is Defendant's motion for summary judgment in which Defendant argues that a state agency's decision in an unemployment compensation

hearing collaterally estops Trimble from arguing that she was terminated.[1]  (Doc. # 7.)  The motion has been fully briefed.  (*See* Docs. # 14 & 15.)   For the reasons discussed below, the motion is due to be denied.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion." *Celotex*

---

[1] Defendant's motion to dismiss will be considered as a motion for summary judgment. Defendant attached two exhibits to its motion. (*See* Docs. # 7-1 & 7-2.) In attaching these exhibits, Defendant has asked this court to analyze facts beyond the four corners of the complaint. *See Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) ("[w]hen the court considers matters outside of the pleadings, the Rule 12(b)(6) motion converts into a Rule 56 motion for summary judgment"). Additionally, Plaintiff urges application of the summary judgment standard (Doc. # 14, at 2), and Defendant replies "that summary judgment is the appropriate standard here" (Doc. # 15, at 1 n.1). Thus, Defendant's motion to dismiss will be treated as a motion for summary judgment, and the summary judgment standard of review will be applied.

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials . . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. BACKGROUND[2]

In March 2013, Defendant hired Trimble to work as a medical assistant. (Doc. 1, ¶ 13.) At the end of her employment, Trimble worked as a medical assistant for Dr. William Saliski ("Saliski"). Trimble received positive performance reviews from her employer throughout her employment and believes she was the highest paid medical assistant at MPC. (Doc. # 1, ¶ 16.) Trimble was never formally promoted from her medical assistant position during the course of her employment at MPC.

In July 2019, Defendant hired Ms. Julie Paul ("Paul"), a white woman, as the practice administrator. (Doc. # 1, ¶ 18.) Soon after starting her employment, Paul created a new job position titled clinical coordinator. In August 2019, Defendant selected Kristen Mosheim ("Mosheim"), a white woman employed at MPC, to fill the clinical coordinator position, without opening the position to all employees. (Doc. # 1, ¶ 20.) Defendant did not permit any African American employees, including Trimble, to apply. (Doc. # 1, ¶ 21.)

In late August 2019, Trimble spoke with Paul about the decision to hire Mosheim. (Doc. # 1, ¶ 24.) Trimble shared that the decision to promote Mosheim without considering African American employees was discriminatory. Paul stated

---

[2] The sole evidentiary issue raised by Defendant's motion is whether Plaintiff was terminated from her employment or resigned voluntarily. Due to the absence of evidence in the record of Plaintiff's employment history preceding this pivotal point and the lack of an opportunity for discovery, these facts are drawn from Plaintiff's Complaint (Doc. # 1) and the EEOC charge (Doc # 1-1).

4

that she did not "want to hear that in this office on the floor," that the doctors had her "back 100%," and that Trimble could just "deal with it." (Doc. # 1, ¶ 27.) Trimble next shared her concerns with Saliski that Paul's decision was discriminatorily based on race. (Doc. # 1, ¶ 29.)

Over the following months, Trimble repeatedly shared with Saliski her concerns that Paul's decision was discriminatory and that Paul and Mosheim were subjecting her to retaliatory hostility for voicing her concerns. (Doc. # 1, ¶ 30.) Defendant did not subsequently take any investigatory or remedial action. (Doc. # 1, ¶ 32.)

In November 2019, Trimble received an annual performance review and bonus from Paul. (Doc. # 1, ¶ 33.) Trimble's bonus had been reduced by a third of the amount she received the previous year, despite her having received another positive performance review. (Doc. # 1, ¶ 34.) Trimble was told by Paul that it was because of their "differences." (Doc. # 1, ¶ 35.) Trimble asked to clarify if it was because of the concerns she raised about the hiring process for the clinical coordinator position, and Paul replied that it was, and that Trimble should have been fired. (Doc. # 1, ¶¶ 36–37.)

Later in November 2019, Paul, at a staff meeting, announced that Trimble had resigned and would be leaving MPC. (Doc. # 1, ¶ 38.) At that time, Trimble informed Paul that she had not resigned or been terminated. (Doc. # 1, ¶ 40.) Again,

on December 10, 2019, Paul called Trimble into her office and instructed her to tender her resignation, threatening to withhold Trimble's last paycheck if she did not comply. Paul reiterated that her actions were motivated by their "personal differences." (Doc. # 1, ¶¶ 41–42.) Trimble refused and told Paul that she did not intend to leave the company. That same day, Trimble contacted Saliski informing him about the situation. Saliski spoke with her in-person about Paul's decision. (Doc. # 1, ¶¶ 44–45.)

On December 26, 2019, Paul presented Trimble with a typed-out resignation letter and instructed her to sign it. (Doc. # 1, ¶ 46.) Trimble, once again, refused and told Paul that she was not resigning her employment with Defendant. (Doc. # 1, ¶ 47.) Later that day, Paul sent Mosheim to collect Trimble's work keys and informed her that her last day would be December 27, 2019. Trimble alleges that Defendant terminated her on December 27, 2019. (Doc. # 1, ¶ 49.) Trimble believes that her mistreatment, and ultimate termination, were motivated by her race and in retaliation for her good faith opposition to conduct made unlawful by Title VII and § 1981. (Doc. # 1, ¶¶ 50–51.)

Trimble applied for unemployment compensation, which Defendant opposed. After a hearing, the Alabama Department of Labor ("ADOL") denied unemployment benefits on the basis that "the claimant left work to seek other employment," in other words, that Trimble "voluntarily quit without good cause

connected with work." (Doc. # 1, 1; Doc. # 7-1); *see also* Ala. Code § 25-4-78(2) (providing that an individual who resigns employment "without good cause connected with such work" is disqualified from receiving unemployment benefits).

## IV. DISCUSSION

Defendant argues that Trimble is collaterally estopped from relitigating whether she was terminated by Defendant because that issue was decided in the prior ADOL unemployment benefits hearing. Specifically, Defendant contends that the hearing officer determined that "[t]he preponderance of evidence shows that the claimant left work to seek other employment." (Doc. # 7-1, at 2.) Whether Defendant terminated Trimble is relevant for all four of her claims brought pursuant to Title VII (Count 1 and Count 3) and § 1981 (Count 2 and Count 4). Trimble, of course, disagrees and asserts that ADOL's findings "have no preclusive effect on Plaintiff's Title VII and § 1981 claims" and that Defendants have not proven the elements of collateral estoppel. (Doc. # 14, at 5–6.) For the reasons to follow, Defendant has not established all of the necessary elements to invoke collateral estoppel as to Trimble's § 1981 claims, and the ADOL's findings have no preclusive effect on Trimble's Title VII claims.

### A. Section 1981 Claims (Counts 2 and 4)

When a state agency, like the ADOL, acts in a judicial capacity to "'resolve[] disputed issues of fact properly before it which the parties have had an adequate

7

opportunity to litigate, . . . federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts.'" *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986) (quoting *Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)) (internal quotation marks omitted). This preclusive effect, or collateral estoppel, "applies even where the agency's fact-finding is not reviewed by a state court." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003) (citation omitted). Here, it is undisputed that the ADOL hearing officer acted in a judicial capacity when it determined that Trimble voluntarily quit her job. However, the parties disagree as to whether the ADOL's findings have preclusive effect on § 1981 claims.

Trimble argues that, as a matter of law, ADOL's findings have no preclusive effect on § 1981 claims. Despite this assertion, Trimble's cited authorities only support an argument that unreviewed findings by a state agency acting in a judicial capacity can have a preclusive effect on 42 U.S.C. § 1983 claims. Those authorities do not address the preclusive effect of unreviewed administrative findings on § 1981 claims. *See Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 610 (11th Cir. 2004); *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1021–22 (11th Cir. 2001).

Defendant correctly argues that state agency decisions made in a judicial capacity can have a preclusive effect on § 1981 claims. In *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), the Supreme Court held that, when adjudicating

8

Reconstruction Era Civil Rights laws, which include § 1981 and § 1983, federal courts are to give the same preclusive effect to the findings of state agencies acting in a judicial capacity that state courts would give to those findings. *See* 478 U.S. at 796–99. Thus, the issue is whether Trimble's § 1981 claims in Counts 2 and 4 are barred under Alabama's law of collateral estoppel. *See Quinn*, 330 F.3d at 1329 n.8 ("In § 1983 cases, federal courts considering whether to give preclusive effect to [state administrative] judgments must apply that state's law of collateral estoppel.").

Under Alabama law, collateral estoppel applies to issues raised in state administrative proceedings provided that five elements are met:

> (1) there is identity of the parties or their privities; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999), *overruled on other grounds by Ex parte Rogers*, 68 So. 3d 773 (Ala. 2010). "The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication." *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 520 (Ala. 2002). Both parties cite the Eleventh Circuit's decision in *Mitchell v. Humana Hospital-Shoals* as establishing the elements of

collateral estoppel under Alabama law.³  *See* 942 F.2d 1581, 1583 (11th Cir. 1991). However, based on recent Alabama Supreme Court authority, whether ADOL's findings have a preclusive effect on Trimble's claims will be analyzed utilizing the elements set out in *Smitherman*. *See Caton v. City of Pelham*, No. 1190589, 2020 WL 7326399, at *12 (Ala. Dec. 11, 2020) (applying *Smitherman* to analyze whether collateral estoppel applied to a determination made in an unemployment compensation proceeding). Here, Defendant has not met its burden of demonstrating the third element of the *Smitherman* test.

Defendant has not argued or established that, in the unemployment compensation proceeding, the parties had an adequate opportunity to litigate the issue of whether Trimble was terminated or voluntarily resigned. Courts have concluded that Alabama's Unemployment Compensation Act, Ala. Code § 25-4-1, *et seq.*, incorporates procedures that afford parties an adequate opportunity to litigate the issue of termination in an unemployment compensation claim hearing. *See Petty v. United Plating, Inc.*, No. CV-09-S-1465-NE, 2012 WL 2047532, *12 (N.D. Ala. 2012) (citing *Smitherman*, 743 So. 2d at 446). "But this does not necessarily mean

---

³ The Eleventh Circuit in *Mitchell* set out the elements of collateral estoppel recognized by Alabama courts as the following: "1. The party claiming the benefit of the prior judgment is one who would have been prejudiced by a contrary decision in the earlier case. 2. The party sought to be estopped was either a party or in privity with a party to the earlier case. 3. The latter suit must have involved an issue identical to one actually litigated and decided in the earlier case. 4. Resolution of the identical issue must have been necessary to the earlier judgment." 942 F.2d at 1583. The *Mitchell* test does not expressly include the "adequate opportunity to litigate" element of the *Smitherman* test.

that the mere existence of an unemployment compensation claim hearing equates with an adequate opportunity." *Chase v. Ace Hardware Corp.*, No. CIV.A. 13-77-KD-M, 2014 WL 517488, at *9 (S.D. Ala. Feb. 7, 2014) (quotation marks omitted). Whether a party had an adequate opportunity to litigate a discharge issue may be determined by reviewing non-exclusive factors such as:

> 1) whether the party against whom collateral estoppel is being asserted lacked the incentive to vigorously litigate in the prior action; 2) the foreseeability of the second action; 3) the size of the claim; 4) the extent of the litigation and the party's participation in it; 5) the competence of counsel; 6) the availability of new evidence; 7) the ability of the party against whom collateral estoppel is being asserted to defend or prosecute the prior action, including any inconvenience due to forum or location; and 8) and whether the party to be estopped without fault of his own was deprived of crucial evidence or witnesses in the prior litigation.

*Id.* at *10 (internal citation omitted).

Defendant has not shown that Trimble had an adequate opportunity to present testimony or other evidence to oppose Defendant's position that she resigned her employment and to show instead that she was fired. For a start, it not clear whether Trimble had an opportunity to address all the circumstances that she contends contributed to her termination. The hearing officer's written decision references events beginning on November 20, 2019; however, Trimble alleges that the events that culminated in her termination began in August 2019.

Additionally, the record is incomplete. Defendant's exhibits do establish some relevant information. They establish that an unemployment benefits hearing

11

was held, via telephone on February 3, 2020, and that Trimble and an "employer representative with witness" were present. (Doc. # 7-1, at 1.) Additionally, the exhibits establish that neither party was represented by counsel at the hearing. (*See* Doc. # 7-1, at 1.) And other potentially relevant information remains unknown. A non-exhaustive list includes: 1) the identity of the employer witness; 2) the duration of the proceeding; 3) what evidence was presented by the parties or witnesses; 4) whether there was direct- or cross-examination; and 5) what testimony was provided by the parties or witnesses. It is unclear whether Trimble had an adequate opportunity to litigate the reason for why she is no longer employed by Defendant.

The court only has before it ADOL's "Decision on Unemployment Compensation Claim" letter and the State Board of Appeals's "Disallowance of Application for Leave to Appeal to the Board of Appeals" letter. (*See* Docs. # 7-1, 7-2.) Trimble's argument that the foregoing letters do not appear to represent ADOL's complete analysis is persuasive at this early litigation juncture. (*See* Doc. # 14, at 3.) Significantly, Defendant did not attach a transcript from the hearing. *See* Ala. Admin. Code § 480-1.4.04(7) ("Oral proceedings shall be recorded by the Hearing Officer . . . ."). Other courts in this district have relied on information within the transcript to evaluate whether an unemployment benefits hearing has preclusive effect. *See, e.g., Rigby v. Marshall*, 134 F. Supp. 2d 1259, 1262 (M.D. Ala. 2000). Defendant also did not identify evidence and witness testimony that was presented

12

to the hearing officer, and did not provide any documentation that was used by the parties to argue whether Trimble resigned from her employment. What evidence was provided at the hearing and the depth of the hearing officer's analysis of that evidence are missing. The exhibits that Defendant has provided are not sufficient to evaluate the adequacy of Trimble's opportunity to litigate the issues surrounding her termination during the ADOL hearing. Here also, the concern over relying on a potentially cursory analysis of the issues is heightened by Trimble's specific assertions that Defendant repeatedly engaged in behavior that attempted to make it appear that Plaintiff voluntarily quit. (*See* Doc. # 1, at ¶¶ 38–48.)

Defendant has not met its burden to demonstrate the third element of collateral estoppel. Therefore, Defendant's motion for summary judgment on Trimble's § 1981 claims in Counts 2 and 4 is due to be denied.

B. **Title VII Claims (Counts 1 and 3)**

The analysis is different for Trimble's Title VII claims. Federal courts cannot give preclusive effect to judicially unreviewed state administrative proceedings in Title VII actions. *See Elliot*, 478 U.S. at 796 ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."). Applying *Elliott*, the Eleventh Circuit has "consistently recognized" that unreviewed state administrative proceedings have no preclusive effect on a subsequent suit under Title VII. *Bishop*, 361 F.3d at 610; *see also Crapp*, 242 F.3d at 1017. It is

undisputed that the unemployment benefits hearing in this case was not judicially reviewed.

Trimble believes that ADOL's findings, under longstanding precedent, should not have preclusive effect on her Title VII claims. However, Defendant argues that *Elliott*'s holding is limited to state and local administrative proceedings in which discrimination allegations may be heard. Defendant's argument is not persuasive.

Defendant starts by quoting *Elliot*, where the Court wrote: "Under 42 U.S.C. § 2000e–5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give 'substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law.'" 478 U.S. at 795–96 (alterations in original). Defendant correctly concludes that the Court relied on this language to find that, if the EEOC does not give agency findings preclusive effect, the trial court should not have to either. *See id.* Defendant next argues that the entities referenced in *Elliot*, *Bishop*, *Crapp*, and 42 U.S.C. § 2000e–5(b) are state and local administrative agencies that hold proceedings in which discrimination allegations may be heard. The foundation of Defendant's argument is that its interpretation of *Elliot*, and its progeny, is correct.

Defendant provides no example of a court's adoption of this interpretation. Numerous district courts have found that the determinations from a state

unemployment compensation or insurance proceeding that have not been subjected to judicial review cannot be given preclusive effect to Title VII claims. *See, e.g.*, *Fugett v. Sec. Transp. Servs., Inc.*, 147 F. Supp. 3d 1216, 1229 (D. Kan. 2015) (finding that the Kansas Department of Labor determination that the plaintiff qualified for unemployment benefits despite quitting her job due to harassment did not have a preclusive effect on the plaintiff's Title VII claim because there was no judicial review of that decision); *Johnson v. Miss. Power Co.*, No. 3:13CV798TSL-JMR, 2014 WL 1153711, at *2 (S.D. Miss. Mar. 21, 2014) (finding that the Mississippi Department of Employment Security's prior determination in its unemployment compensation hearing did not have preclusive effect on plaintiff's Title VII claim because it was not reviewed by a state or federal court); *Russo v. Lightning Fulfillment, Inc.*, 196 F. Supp. 2d 203, 209–10 (D. Conn. 2002) (finding that Connecticut Security Appeals division referee determination that the plaintiff was ineligible for unemployment compensation benefits did not have preclusive effect because it was not reviewed by a state or federal court); *Hernandez v. N.Y.C. L. Dep't Corp. Couns.*, No. 94CIV.9042(AJP)(SS), 1997 WL 27047, at *16 (S.D.N.Y. Jan. 23, 1997) (finding that the plaintiff was not collaterally estopped by the judicially unreviewed decision of the unemployment insurance board and the defendant's summary judgment motion on the plaintiff's Title VII claim was denied); *Caras v. Fam. First Credit Union*, 688 F. Supp. 586, 589 (D. Utah 1988)

("In the instant case, plaintiff's unemployment compensation hearing was not subsequently reviewed by a state or federal court. Thus, under *University of Tennessee*, the administrative decision cannot be given any preclusive effect as to the Title VII claim even if it met the requirements for collateral estoppel, since Congress has guaranteed a federal forum in Title VII cases." (citing *Elliott*, 478 U.S. at 788)). Defendant's argument fails in light of the consistent interpretation of district courts across the country.

Defendant also argues that the Supreme Court's decision in *Elliot* applies only to claim preclusion, and not to collateral estoppel (issue preclusion). *See Elliot*, 478 U.S. at 798. Defendant cites no authority adopting this interpretation. However, numerous circuit courts go the other way.

"Following *Elliot*, the courts of appeals have unanimously concluded that unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII proceedings." *Roth v. Koppers Indus., Inc.*, 993 F.2d 1058, 1062 (3d Cir. 1993). *See also Crapp*, 242 F.3d at 1017; *Rao v. Cnty. of Fairfax*, 108 F.3d 42, 45 (4th Cir. 1997); *McInnes v. California*, 943 F.2d 1088, 1093–94 (9th Cir. 1991); *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 114–15 (2d Cir. 1987); *Duggan v. Bd. of Educ.*, 818 F.2d 1291, 1293 (7th Cir. 1987); *Abramson v. Council Bluffs Cmty. Sch. Dist.*, 808 F.2d 1307, 1308–09 (8th Cir. 1987). As set out in *McInness*,

> The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court. Under either of those circumstances, 28 U.S.C. § 1738 applies by its own terms. In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them. Section 1738 does not apply to such determinations, and the Court in *Elliott* refused to fashion a federal common-law rule of preclusion in the Title VII context.

943 F.2d at 1093–94. Defendant's argument is unpersuasive considering the consistent interpretation of circuit courts across the country.

Under longstanding precedent, the unreviewed ADOL findings as to Trimble's termination do not have preclusive effect on Trimble's Title VII claims. It is thus unnecessary to address Defendant's other arguments that collateral estoppel bars Counts 1 and 3. In sum, Defendant's motion for summary judgment as to Trimble's Title VII claims is due to be denied.

## V.  CONCLUSION

For the reasons provided above, it is ORDERED that Defendant's summary judgment motion (Doc. # 7) is DENIED.

It is further ORDERED that Defendant's motion to dismiss (Doc. # 7) is DENIED as moot.

DONE this 24th day of February, 2022.

/s/ W. Keith Watkins<br>
UNITED STATES DISTRICT JUDGE